```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW HAMPSHIRE
```

NH Youth Football & Spirit
Conference et al.

    v.                                Case No. 06-cv-342-PB
                                            Opinion No. 2007 DNH 074
Zurich American Insurance Co. and
Gagliardi Insurance Services, Inc.

    v.

J.R. Olsen Bonds & Insurance Brokers, Inc.
    Third Party Defendant


### MEMORANDUM AND ORDER

This case arises from an insurance contract dispute. Plaintiff, New Hampshire Youth Football and Spirit Conference et al. ("NH Youth Football"), seeks a declaratory judgment against Zurich American Insurance Company ("Zurich") and has sued Gagliardi Insurance Services, Inc. ("GIS") for breach of contract, negligence, and deceptive and unfair trade practices. GIS has filed a third-party complaint against J.R. Olsen Bonds & Insurance Brokers, Inc. ("J.R. Olsen"). J.R. Olsen now moves to dismiss the third-party complaint for lack of personal

jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Because I hold that this court lacks personal jurisdiction over J.R. Olsen, I grant its motion to dismiss.

## I. FACTUAL OVERVIEW[1]

GIS provides brokerage services to youth, amateur, and professional sports organizations throughout the United States. J.R. Olsen is a wholesale bond and insurance broker, and over 90 percent of its customers are insurance agents and brokers such as GIS. J.R. Olsen processes approximately 20,000 bonds each year, of which approximately ten to twelve relate to some form of commercial or non-profit activity in New Hampshire.

NH Youth Football, a youth football and cheerleading organization based in New Hampshire, has purchased insurance coverage from GIS for many years. This coverage has included non-profit director, officer, and employee liability protection ("D&O coverage"). J.R. Olsen, in its role as an insurance broker, acted as an intermediary between GIS and Zurich and

---

[1] The facts in this section are drawn primarily from GIS's objection to J.R. Olsen's motion to dismiss. I accept facts submitted by GIS as true for purposes of deciding J.R. Olsen's motion to dismiss.

obtained D&O coverage from Zurich for San Gabriel Valley, Jr. All-American Football Conference, Inc. for the policy year running from July 15, 2004 to July 15, 2005 ("the San Gabriel Policy"). Appendix A to that policy amended the policy's definition of "Company" (insured) so as to include each of the more than 340 youth football organizations listed in the Appendix, including fifteen organizations from New Hampshire, many of which became part of NH Youth Football in 2005. For each such youth football organization, J.R. Olsen received compensation reflecting a percentage of the premium. When GIS submitted its brokers agreement to J.R. Olsen, GIS advised J.R. Olsen of the various states — including New Hampshire — in which GIS does business.

In May 2005, GIS solicited NH Youth Football's renewal of its then-existing insurance coverage in accordance with the "2005 Youth Football Insurance Package" and provided the necessary forms for NH Youth Football to apply for various insurance policies. The application materials included forms for the renewal of NH Youth Football's coverage through the San Gabriel Policy. In July 2005, NH Youth Football returned to GIS the completed 2005 Youth Football Insurance Package, along with a

check to cover the cost of the insurance policies.  The check included an amount for the cost of D&O coverage for the period from July 15, 2004 to July 15, 2005.  After receiving the paperwork associated with NH Youth Football's renewal application for D&O coverage, and in accordance with the parties' practice in prior years, GIS sent the appropriate paperwork to J.R. Olsen for J.R. Olsen to secure such coverage from Zurich Insurance.

NH Youth Football was sued by the New Hampshire Pop Warner Football Conference in early 2006.  GIS subsequently learned that Zurich denied that NH Youth Football had any D&O coverage for the period from July 15, 2005 to July 15, 2006, asserting that: (1) Zurich lacked any record of NH Youth Football being added to the D&O insurance policy as an insured; (2) NH Youth Football is not listed on the schedule of additional insureds submitted by Zurich to J.R. Olsen; (3) NH Youth Football is not listed on the schedule of additional insureds endorsed to the policy; and (4) Zurich neither billed nor received any premium representing coverage for NH Youth Football.

In September 2006, NH Youth Football filed suit against Zurich and GIS in this court, seeking a declaratory judgment against Zurich and asserting breach of contract, negligence, and

-4-

deceptive trade practices causes of action against GIS.  In November 2006, GIS filed a third party complaint against J.R. Olsen, asserting breach of contract, negligence, contribution, and indemnification claims.  In support of its claims, GIS alleges that if Zurich's reasons for denying D&O coverage to NH Youth Football are correct, then J.R. Olsen failed to take appropriate steps to secure the D&O coverage from Zurich despite its having received the renewal application and paperwork from GIS.  J.R. Olsen now moves to dismiss GIS's third party action for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

## II.   LEGAL OVERVIEW

### A.   Standard Of Review

When a defendant contests personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of showing that a basis for asserting jurisdiction exists.  <u>Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n</u>, 142 F.3d 26, 34 (1st Cir. 1998).  Because I have not held an evidentiary hearing, GIS need only make a prima facie showing that the court has personal jurisdiction over

J.R. Olsen.  See Sawtelle v. Farrell, 70 F.3d 1381, 1386 n.1 (1st Cir. 1995)(citing United Elec., Radio, & Mach. Workers v. 163 Pleasant Street Corp., 987 F.2d 39, 43 (1st Cir. 1993).

To make a prima facie showing of jurisdiction, a plaintiff may not rest upon the pleadings.  Rather, the plaintiff must "adduce evidence of specific facts" that support its jurisdictional claim.  See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995).  I take the facts offered by the plaintiff as true and construe them in the light most favorable to its claim.  See Mass. Sch. of Law, 142 F.3d at 34.

I do not act as a fact-finder when considering whether a plaintiff has made a prima facie showing of personal jurisdiction.  Rather, I determine "whether the facts duly proffered, [when] fully credited, support the exercise of personal jurisdiction." Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 84 (1st Cir. 1997).  While the prima facie standard is liberal, I need not "credit conclusory allegations or draw farfetched inferences." Mass. Sch. of Law, 142 F.3d at 34 (quotation omitted).  I also consider facts offered by the third-party defendant, but only to the extent that they are

uncontradicted.  See id.

**B.    The Law Governing Personal Jurisdiction**

Federal Rule of Civil Procedure 4(k)(1)(A) provides that "[s]ervice of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located . . . ."  Thus, when assessing personal jurisdiction over a non-resident defendant in a diversity of citizenship case such as this one, the federal court "'is the functional equivalent of a state court sitting in the forum state.'"  Sawtelle, 70 F.3d at 1387 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)).  Because New Hampshire's long-arm statute, N.H. Rev. Stat. Ann. § 293-A:15.10, authorizes jurisdiction to the full extent permitted by the federal Constitution, the sole inquiry is "whether the exercise of personal jurisdiction comports with federal constitutional standards."  Id. at 1388.

The Due Process Clause precludes a court from asserting jurisdiction over a defendant unless "the defendant's conduct and connection with the forum State are such that [it] should

reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  The "constitutional touchstone" for personal jurisdiction is "whether the defendant purposefully established 'minimum contacts' in the forum State."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  The inquiry into "minimum contacts" is necessarily fact-specific, "involving an individualized assessment and factual analysis of the precise mix of contacts that characterize each case."  Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994).  A defendant cannot be subjected to a forum state's jurisdiction based solely on "random," "fortuitous," or "attenuated" contacts.  Burger King, 471 U.S. at 475 (quotations omitted).  Rather, "'it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

   A court may assert authority over a defendant by means of either general or specific jurisdiction.  Mass. Sch. of Law, 142 F.3d at 34.  "The standard for evaluating whether . . . contacts

satisfy the constitutional general jurisdiction test 'is considerably more stringent' than that applied to specific jurisdiction questions." Noonan v. Winston Co., 135 F.3d 85, 93 (1st Cir. 1998) (quoting Glater v. Eli Lilly & Co., 744 F.2d 213, 216 (1st Cir. 1984)).  A defendant who has engaged in continuous and systematic activity in a forum is subject to general jurisdiction in that forum with respect to all causes of action, even those unrelated to the defendant's forum-based activities. Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).  In order to establish general jurisdiction, two criteria must be met: (1) "'continuous and systematic general business contacts'" must exist between the defendant and the forum; and (2) the exercise of jurisdiction must be reasonable as demonstrated by certain "gestalt factors." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 619 (1st Cir. 2001) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984)).

In contrast, a court may exercise specific jurisdiction only when the cause of action arises from, or relates to, the defendant's contacts with the forum.  Id.  The First Circuit divides the constitutional analysis of specific jurisdiction into

-9-

three categories: "relatedness, purposeful availment, and reasonableness."  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 60 (1st Cir. 2002).  As to the first requirement, "[t]he evidence produced to support specific jurisdiction must show that the cause of action either arises directly out of, or is related to, the defendant's forum-based contacts."  Harlow v. Children's Hosp., 432 F.3d 50, 60-61 (1st Cir. 2005).  "[T]he defendant's in-state conduct must form an important, or at least material, element of proof in the plaintiff's case."  Id. at 61 (quotation and brackets omitted).  With respect to the second requirement, "the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable."  Daynard, 290 F.3d at 61 (quoting Foster-Miller, 46 F.3d at 144).  "The cornerstones upon which the concept of purposeful availment rests are voluntariness and foreseeability."  Id. (quoting Sawtelle, 70 F.3d at 1391).  Finally, the exercise of jurisdiction must be reasonable in light of certain "Gestalt factors."  Id. at 62 (citing World-Wide Volkswagen Corp, 444 U.S.

at 292 (listing factors) and quoting Foster-Miller, 46 F.3d at 144).

### III. ANALYSIS

GIS bases its jurisdictional argument solely on specific jurisdiction.  Thus, the First Circuit's tri-partite analysis of relatedness, purposeful availment, and reasonableness applies, and I focus my analysis accordingly.  Because I conclude that GIS cannot satisfy the relatedness component of the specific jurisdiction test, I analyze only this requirement.

The relatedness component of the specific jurisdiction test ensures that a defendant with only limited contacts with a forum state will not be subject to suit in the state's courts without "fair warning that a particular activity may subject [the defendant] to the jurisdiction of a foreign sovereign . . . ." Burger King, 471 U.S. at 472 (citation omitted).  The relatedness requirement serves this purpose by requiring the existence of a nexus between a defendant's contacts with the forum and the plaintiff's cause of action.  See Ticketmaster, 26 F.3d at 206-07.

The relatedness requirement is analyzed in light of the

-11-

particular claims asserted.  See Phillips Exeter Acad., 196 F.3d at 289.  In determining relatedness in contract cases, a court "must look to the elements of the cause of action and ask whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach."  Id. (citations omitted).  In tort cases, a court must examine the causal nexus between the defendant's contacts and the plaintiff's cause of action.  Id.  In terms of the causal nexus analysis, "an in-forum effect of an extra-forum breach" is "inadequate to support a finding of relatedness."  See id. at 291 (citations omitted).

Here, GIS alleges in its contract claim that it was party to a contract with J.R. Olsen to obtain D&O coverage for NH Youth Football from Zurich.  According to GIS, J.R. Olsen breached this contract by failing to secure the coverage.  GIS concedes, however, that there was no contact between J.R. Olsen and NH Youth Football, and that all of the contacts between GIS and J.R. Olsen relating to the matter took place in California.  Further, J.R. Olsen's alleged failure to forward the paperwork to Zurich did not take place in New Hampshire.  To be sure, forum-state contacts need not involve physical presence to be constitution-

ally significant.  See id., 196 F.3d at 290 (quoting Burger King, 471 U.S. at 476).  However, "[t]he relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state."  Phillips Exeter Acad., 196 F.3d at 290 (citation and internal quotation marks omitted).  Such specific contacts between J.R. Olsen and New Hampshire are lacking here.  GIS has alleged only that its breach of contract cause of action arose out of a general relationship between J.R. Olsen, GIS, and NH Youth Football and therefore has not demonstrated that J.R. Olsen had contacts with New Hampshire that were instrumental in the contract's breach or formation.  Thus, GIS's contract claim fails to satisfy the relatedness component of the personal jurisdiction analysis.

Similarly, GIS has failed to demonstrate a sufficient causal nexus for its negligence, contribution, or indemnification claims.  GIS's primary negligence argument is that J.R. Olsen breached its duty to GIS to take reasonable and appropriate steps to secure D&O coverage for NH Youth Football.  J.R. Olsen's failure to secure this coverage, however, is at most an in-forum

effect of an extra forum breach which, as discussed above, is inadequate to support a finding of relatedness.

Because GIS has not demonstrated that a sufficient nexus exists between the defendants' forum state activities and its causes of action, it has failed to satisfy the relatedness requirement of the specific personal jurisdiction test.

## IV. CONCLUSION

For the reasons discussed above, I hold that this Court cannot exercise personal jurisdiction over J.R. Olsen as GIS has not shown that J.R. Olsen's forum-based activities satisfy due process requirements.  Therefore, I grant J.R. Olsen's motion to dismiss for lack of personal jurisdiction (Doc. No. 20).

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

June 11, 2007

cc: Randall Block, Esq.
    Timothy Gudas, Esq.
    Christopher Hawkins, Esq.
    Mark Howard, Esq.
    Edward Kaplan, Esq.
    John Kissinger, Esq.
    Veena Mitchell, Esq.

```
Danielle Pacik, Esq.
Michael Ramsdell, Esq.
```